IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| ANNE GRAHAM, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 5:06-CV-258(CAR) |
| ROBINS FEDERAL CREDIT UNION, | : |
| Defendant. | : |

## ORDER ON DEFENDANT'S MOTION
## FOR SUMMARY JUDGMENT

Before the Court is Defendant's Motion for Summary Judgment (Doc. 14). For the reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED**.

I. **FACTUAL FINDINGS**

Viewing the evidence in the light most favorable to Plaintiff, as the nonmoving party, the Court finds as follows. Mrs. Anne Graham ("Graham") was originally hired by Robins Federal Credit Union ("RCFU") on October 12, 1973, as a Central Distribution Clerk. By 2001, Graham had been promoted to Branch Manager of the Warner Robbins Air Force Base branch.

That same year, Graham considered resigning her employment, but after learning that her husband's health was declining and her current insurance would only cover treatment if she continued her employment, she decided against retirement. Shortly thereafter, Graham was granted approximately six weeks of leave to care for her husband. Upon returning to work, Graham moved to RCFU's Northside branch as the Branch Manager.

Beginning in October of 2004, Defendant alleges Graham's performance began to

decline. Around that time, Henry Garcia ("Garcia"), the Executive Vice President and Chief Operating Officer of RCFU, called Graham to inform her that the Northside branch would be closing. Garcia also expressed some concern about Graham's performance and emphasized that Graham needed to improve her coaching and leadership skills and to develop a good working relationship with her staff. After a brief discussion, Garcia then asked Graham "how much longer are you going to work?" Graham was offended by the conversation, and replied that she did not know exactly when she was going to retire but planned to work as long as she could or at least until she was sixty-two.

Shortly thereafter, a branch manager position opened at the Houston Road branch in Warner Robins. Because her current branch would be closing, Mrs. Graham submitted an application for the open branch manager position at the Houston Road branch. During Graham's interview for the position, Garcia failed to ask questions related to the position for which she was applying. Rather, he again asked her when she planned on retiring and suggested that she consider "stepping down and taking it easy." Although, Graham was the only branch manager who applied for the branch manager position at Houston Road, the position was awarded to an assistant branch manager named Natalie Wilson who was substantially younger than Graham and did not have near the years of experience with RFCU which Graham possessed.

As Graham's current branch was to close, Garcia called Graham in early December of 2004 to inform her that she was being transferred to the assistant branch manager position at the Base branch. The branch manager position at the same branch was already filed at the time by Rick Franklin ("Franklin"), a substantially younger employee with approximately one year of experience at RFCU. Graham was stunned to learn of her demotion as she still maintained a

spotless work record and alleges no one had ever told her that she was not performing her job up to standards. Graham subsequently asked Garcia why she was not promoted over Franklin. Garcia allegedly stated that he was retained "because he is younger" and "he's going to be here longer."

Graham began her position as assistant branch manager under Franklin at the Base branch in January of 2005. On February 14, 2005, Garcia conducted a yearly performance review of Graham's 2004 job performance. Garcia ranked her as 'occasionally meets objectives' in several categories despite having no disciplinary actions, write-ups, or employee counseling forms in her personnel file.

In May of 2005, Graham received her first disciplinary action when she approved a loan without reducing the amount of the loan to match a change in collateral. When Graham approved the loan, the collateral was listed as an Expedition, but she admits that she found out before the loan was completed that the collateral was instead a lower-valued Explorer.

Graham received another disciplinary action in July of 2005 for approving a loan outside of established loan procedures. Plaintiff approved a loan for a lower interest rate than the rate for which the member qualified. Plaintiff does not dispute that she made the mistake.

In September of 2005, Graham made another loan error when she issued a signature loan without adding it to an existing signature loan in violation of RFCU established loan procedures. Graham admits she made this error, but contends that an unidentified "glitch" in the computer system caused the error. Defendants contend that they attempted to corroborate any problem with the computer system which would have caused the error, but were unable to find a problem.

Allegedly, due to these errors, a lack of production in making loans, and a lack of

assisting members and tellers during peak times, Graham was placed on probation on September 14, 2005. As a result of her probationary status, Franklin developed monthly job requirements for Graham to meet for the remainder of the year, including a monthly loan goal of $100,000.00, assisting 15% of members from sign-in log, and working as a teller on the line during peak transaction times. Graham alleges these goals were unattainable and in excess of the requirements of other assistant branch managers. Defendants contend these duties were expected of other Assistant Branch Managers at other branches.

While on probation, Plaintiff was again disciplined when she violated loan procedures on November 19, 2005. Graham approved a five thousand dollar loan for a term of forty-eight months, when RFCU lending practices limited the term on the loan to thirty-six months. Although this was Graham's fourth disciplinary action of the year, she was not terminated. Instead, she was suspended for 3 days, and her lending authority was temporarily revoked.

On December 2, 2005, Franklin met with Graham to review her performance over the past months. Graham achieved only 38% of her loan goal for October and only 5% of her loan goal for November. In addition, Graham assisted only 9% of members from the sign in log in October and 13% of members from the sign in log in November.

Shortly thereafter, Graham again failed to follow RFCU's procedures when she opened a checking account for a member without verifying the member's credit. Because of poor credit, this member was ineligible for a checking account.

Loan errors are brought to the attention of Andy Flowers ("Flowers"), Vice President of Lending though exception reports that are prepared on a regular basis. Due to these reports, Flowers was aware of Graham's repeated violations. When Flowers became aware of Graham's

December 2, 2005, violation he contacted Human Resources Manager, Patricia Pittman. Together, they made the decision to recommend to Mr. Ruffin, President of the Bank, to terminate Graham. Graham was officially terminated on December 7, 2005, and replaced by Ms. Julie Mixon who was approximately thirty-nine years old at the time.

As a result, Graham filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of gender and age. Upon receiving a right to sue letter from the EEOC, Graham filed a Complaint on July 27, 2006. Graham alleges Defendant discriminated against her, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA"). After discovery in this case was completed, Defendant filed the Motion for Summary Judgment that is currently before the Court.

## II. ANALYSIS

### A. Motion for Summary Judgment

Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the Court must evaluate all evidence and any logical inferences in a light most favorable to the non-moving party. Beckwith v. City of Daytona Beach Shores, 58 F.3d 1554, 1560 (11th Cir. 1995).

"[T]he plain language of Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment, after adequate time and discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The movant carries the initial burden and must meet this burden "by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the non-moving party's case." Id. at 325.  "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The non-moving party is then required "to go beyond the pleadings" and to present competent evidence in the form of affidavits, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324.  The non-moving party must put forth more than a "mere 'scintilla' of evidence;" "there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).  This evidence must consist of more than mere conclusory allegations. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).  Thus, under Rule 56 summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

**B. Administrative Remedies**

Before suing under Title VII or the ADEA, a plaintiff must first exhaust his or her administrative remedies. Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001) (citing Crawford v. Babbitt, 186 F.3d 1322, 1326 (11th Cir. 1999)); Jones v. Dillard's, Inc., 331 F.3d 1259, 1263 (11th Cir.2003) (ADEA). Exhaustion first requires that a plaintiff file a charge of discrimination with the Equal Employment Opportunity Commision. Id. (citing 42 U.S.C. § 2000e-5(b) (1994); Alexander v. Fulton County, 207 F.3d 1303, 1332 (11th Cir. 2000)). A plaintiff must do so within either 180 or 300 days[1] "after the alleged unlawful employment practice occurred." 42 U.S.C.A. § 2000e-5(e)(1) (West 2000). If a plaintiff fails to file before this time elapses, his claim is untimely. Therefore, unless the alleged acts of discrimination have been made the subject of a timely filed EEOC charge of discrimination, the alleged acts cannot form the basis of a Title VII claim.[2] Alexander v. Fulton County, 207 F.3d 1303, 1332 (11th Cir.2000).

Here, although the copy of Plaintiff's EEOC charge of discrimination provided to the Court is undated, it is clear that the charge was filed no earlier than December 7, 2005, the day her employment was terminated. Therefore, Plaintiff is barred from relying on any alleged acts

---

[1]The 300-day time period is utilized in those states that have entities with the authority to grant or seek relief with respect to unlawful employment practices and an employee files a grievance with that agency; in all other states, known as "non-deferral states," the charge must be filed within 180 days. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002). Because Georgia is a non-deferral state, the 180-day time period applies. Watson v. Blue Circle, Inc., 324 F.3d 1252, 1258 (11th Cir. 2003).

[2]An alleged act of discrimination, not specifically included in the EEOC complaint, may form the basis of a Title VII claim if the alleged act of discrimination "was or should have been included in a reasonable investigation of the administrative complaint." Griffin v. Carlin, 755 F.2d 1516, 1522 (11th Cir. 1985). However, because neither party presented argument or evidence addressing this issue, the Court is unable to conclude that any of the time-barred conduct was or should have been included in a reasonable investigation of the administrative complaint.

that occurred before June 10, 2005, which is 180 days prior to the earliest date Plaintiff could have possibly filed her charge.

**C. ADEA Claim**

The ADEA makes it unlawful to use age as a relevant factor in employment decisions. 29 U.S.C.A. § 623(a)(1) (West 2003). In order to recover damages under the ADEA, a plaintiff must first establish a prima facie case. A plaintiff may establish a prima facie discrimination claim through either direct or circumstantial evidence. Damon v. Fleming Supermarkets, Inc., 196 F.3d 1354, 1358 (11th Cir. 1999). As it appears Graham relies on both direct evidence and circumstantial evidence, the Court will address each in turn.

*1. Direct Evidence*

Direct evidence of discrimination is evidence, that, "if believed, proves [the] existence of [a] fact in issue without inference or presumption." Burrell v. Bd. of Trs. of Ga. Military Coll., 125 F.3d 1390, 1393 (11th Cir. 1997) (citations omitted). Direct evidence is composed of "only the most blatant remarks, whose intent could be nothing other than to discriminate" on the basis of some impermissible factor. Carter v. City of Miami, 870 F.2d 578, 582 (11th Cir. 1989). However, "[e]vidence that only suggests discrimination, or that is subject to more than one interpretation, does not constitute direct evidence." Merritt v. Dillard Paper Co., 120 F.3d 1181, 1189 (11th Cir. 1997) (quoting Rollins v. TechSouth, Inc., 833 F.2d 1525, 1528 n.6 (11th Cir. 1987)). An example of direct evidence would be "a management memorandum saying, 'fire [the plaintiff]–he is too old.' Earley v. Champion Int'l Corp., 907 F.2d 1077, 1082 (11th Cir 1990). Furthermore, statements must "directly relate in time and subject to the adverse employment action at issue." Scott v. Suncoast Beverage Sales Ltd., 295 F.3d 1223, 1227 (11th Cir. 2002).

Here, the following remarks are at issue: (1) Garcia asked Graham "how much longer are you going to work?;" (2) Garcia suggested Graham consider "stepping down and talking it easy;" and (3) Garcia stated Rick Franklin was chosen " because he is younger . . . [and] going to be here longer."  Although these statements could possibly provide circumstantial evidence of discriminatory intent, these statements are not direct evidence as the comments still require the Court to infer that the decision to terminate Graham was motivated by Graham's age.  A comment must clearly indicate that someone is being fired because he or she is old to constitute direct evidence of age discrimination.  Accordingly, there exists no direct evidence of age discrimination in this case.

*2. Circumstantial Evidence*

In the absence of direct evidence, a plaintiff must establish a prima facie case of age discrimination through circumstantial evidence.  Discrimination claims supported by circumstantial evidence are treated under the familiar burden-shifting framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248 (1981).  To make out a prima facie case for an ADEA violation, a plaintiff must show that he (1) was a member of the protected group of persons between the ages of forty and seventy, (2) was subject to adverse employment action, (3) was replaced with a person outside the protected group, and (4) was qualified to do the job.  Jameson v. Arrow Co., 75 F.3d 1528, 1531 (11th Cir. 1996).  Furthermore, "[s]ummary judgment against the plaintiff is appropriate if he fails to satisfy any one of the elements of a prima facie case." Turlington v. Atlanta Gas Light Co., 135 F.3d. 1428, 1433 (11th Cir. 1998).

Here, Graham is clearly a member of the protected group and was subject to an adverse

employment action. Further, Graham was replaced by a thirty-nine year old female and was at the time qualified for the position. Thus, Graham has established a prima facie case of age discrimination.

*3. Legitimate Reason and Pretext*

Once a plaintiff sets out a prima facie case, a presumption of discrimination arises, and the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the employer's conduct. Goldsmith v. City of Atmore, 996 F.2d 1155, 1162-63 (11th Cir. 1993). If the employer successfully rebuts the plaintiff's prima facie case, the presumption of retaliation is eliminated, and the plaintiff must then show that these reasons are pretextual, or present other evidence to show that discriminatory intent was more likely the cause of the employer's action. Id. If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the employer's reasons are pretextual, the employer is entitled to summary judgment on plaintiff's claims. Id.

Here, Defendant proffered legitimate non-discriminatory reason for Graham's termination is her declining job performance over a period of months. As Graham's declining job performance is well documented by the evidence submitted to the Court, the Court finds Defendant has articulated a legitimate non-discriminatory reason for Graham's termination. Thus, the burden now shifts back to Graham to show that this reason is pretextual.

Graham offers five arguments to support her claim that Defendant's asserted reason is a pretext for age discrimination: (1) Defendant inquired into Graham's plans for retirement in October of 2004; (2) Defendant consciously selected a younger, less-qualified employee over Mrs. Graham for the branch manager postiton at the Houston Road branch in October of 2004;

(3) Defendant demoted Graham when they transferred her to the position of assistant branch manager of the Base Branch upon the closing of the Northside Branch in December of 2004; (4) Defendant's agent told Graham that a younger employee was selected for the position of branch manger of the Base Branch because he was "younger" and "going to be here longer;" and (5) Defendant imposed unattainable monthly job requirements to ensure her failure. As previously discussed by the Court, Graham is barred from relying on any alleged act that occurred prior to June 10, 2005. Thus, Graham's first four arguments necessarily fail as they are based on acts that occurred in October of 2004 and December of 2004, respectfully.

The Court now turns to Graham's remaining argument that Defendants imposed unattainable monthly job requirements to ensure her failure. Graham does not deny that she committed the procedural policy violations for which she received counseling forms, but contends that those errors were minor mistakes that are routine in the banking business. By making this argument, however, Graham is, in effect, asking this Court to wade into the prohibited waters of second guessing the propriety of an employer's business decision.

"A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer." Chapman v. A.I. Transport, 229 F.3d 1012, 1030 (11th Cir. 2000) . "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." Id. Simply stated,

> [f]ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the ADEA does not interfere. Rather our inquiry is limited to whether the employer gave an honest explanation of its behavior.

Id. (quoting Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991)).

Here, Defendant's proffered justification for the decision to terminate Graham certainly meets the test of being a reason that might motivate a reasonable employer. Thus, whether or not the Court or a jury would reach the same decision under the circumstances is irrelevant as Graham's termination was a decision well within the discretion of an employer.

**C. Title VII Claim**

Gender discrimination claims supported by circumstantial evidence are also treated under the burden-shifting framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248 (1981). Under that framework, the plaintiff bears the initial burden of establishing the elements of a prima facie case of discrimination. Only after the plaintiff has made out a prima facie case, does the burden then shift to the defendant-employer to come forward with one or more legitimate, non-discriminatory reasons for the employee's rejection. Id. To prevail on a claim for discrimination under Title VII, Plaintiff must first make a prima facie showing that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) she was replaced by a person outside her protected class or was treated less favorably than a similarly-situated individual outside her protected class. Maynard v. Bd. of Regents, 342 F.3d 1281, 1289 (11th Cir. 2003).

Here, even if the Court were to assume that Plaintiff can satisfy the first three elements of the prima facie case, Plaintiff is unable to meet the final element. Plaintiff has introduced no evidence that shows she was replaced by a person outside her protected class or that she was treated less favorably than a similarly-situated male. On the contrary, the undisputed evidence

before the Court establishes that Plaintiff was replaced by a thirty-nine year old female. Without satisfying this last element, Plaintiff cannot make the requisite prima facie showing. Accordingly, summary judgment in favor of Defendant is appropriate with respect to Plaintiff's Title VII claim.

### III. CONCLUSION

For the reasons set forth herein, Defendant's Motion for Summary Judgment (Doc. 14) is **GRANTED**.

**SO ORDERED**, this the 20th day of March, 2008.

S/ C. Ashley Royal

**C. Ashley Royal**
**United States District Judge**

SCS/ssh